## SNYDER ET AL. v. HURSEY.

[No. 23,488.　Filed April 26, 1921.]

1. DRAINS.—*Establishment.*—*Report of Drainage Commissioners.*— *Remonstrances.*— *Statutes.*— Under §§6142, 6143 Burns 1914, Acts 1907 p. 508, §§3, 4, each owner of lands described in the report of the drainage commissioners is required to be given notice, and an opportunity to be heard upon a remonstrance for any or all of the statutory reasons.　p. 478.

2. DRAINS.—*Establishment.*—*Report of Drainage Commissioners.*—*Validity.*—*Extending Drain Described in Petition.*—*Statutes.*—Under §6142 Burns 1914, Acts 1907 p. 508, §3, providing that commissioners to whom a petition for a drain is referred may determine the best and cheapest method of drainage, the termini and route, including all necessary arms, vary the line described in the petition, etc., a report by the drainage commissioners laying out a proposed drain which is sufficient and proper as to utility, benefits and expenses thereof, is not contrary to law because the drain, which overlaid a natural watercourse, extends farther up and down stream than the proposed drain described in the petition, and includes laterals above and below the proposed termini, and because lands assessed are not described in the petition, nor the owners thereof named therein.　p. 478.

3. DRAINS.—*Establishment.*—*Fraud.*—*Failure to Tender Issue.* —*Appeal.*—*Questions Reviewable.*—Where a petition for the establishment of a drain purported to ask for drainage for only 480 acres of land belonging to eight owners, and the drain as established, including its branches, was almost eighteen miles in length, and would affect 18,000 acres of land, an objection on appeal that the petition operated as a fraud upon appellant landowners and others not named in the petition,

nor given notice before the cause was docketed, by depriving them of their statutory right to defeat the proceeding by filing a "two-thirds remonstrance" under §6142 Burns 1914, Acts 1907 p. 508, §3, is not reviewable, where the answer or remonstrance filed by appellants did not tender any issue of fraud, and the special finding does not include a finding of fraud or of facts from which an inference thereof must follow as a matter of law, since exceptions to the conclusions of law in such case present no question as to the effect of petitioner's fraud or fraudulent intent in instituting the proceeding.   p. 480.

From Dekalb Circuit Court; *Alphonso C. Wood*, Special Judge.

Proceedings on the petition of Daniel A. Hursey to establish a drain.   From the judgment rendered, Jasper Snyder and others appeal.   *Affirmed.*

*P. V. Hoffman* and *Fred R. Shearer*, for appellants.
*Charles S. Smith* and *Edgar W. Atkinson*, for appellee.

EWBANK, J.—Appellee owned an eighty-acre farm in DeKalb county, Indiana, which is crossed by the south fork of Bear creek, nearly seven miles down stream from the source of the south fork, a little more than a mile up stream from where the south fork and north fork flow together, and about four miles up stream from where Bear creek, as formed by their junction, flows into the St. Joseph river.   In June, 1916, he filed his petition for the construction of a drain in that part of said south fork, three-fourths of a mile in length, extending across his own farm and down stream from his farm a quarter of a mile, across the next farm and the railroad right of way.   He named as the beginning point a place near the up-stream end of his farm, nearly seven miles down stream from the source of the south fork, and as the outlet a place nearly a mile above where the south fork joins the north fork, and nearly

four miles up stream from where Bear creek, as formed by their junction, empties into the river.

His petition stated that the proposed drain would affect 480 acres of land all in one section, belonging to eight owners, including himself, besides the railroad right of way and highways in two townships, but did not name any of the appellants nor describe their lands. The parties named were given notice and the cause was duly docketed on the date fixed by indorsement on the petition, and, no remonstrance having been filed at the expiration of twenty days, was referred to the drainage commissioners. The time allowed for filing a report having been extended, the drainage commissioners filed their report on August 2, 1917, a year after the petition was docketed. This report recited the jurisdictional facts as to the drain being of public utility and that the costs, expenses and damages would be less than the benefits, and laid out the "main drain," commencing at the source of the south fork, and running down stream, following the general course of the south fork to Bear creek and of Bear creek to the St. Joseph river, a distance of more than eleven miles, crossing appellee's farm midway in its course. And it laid out a "north branch" commencing at the source of the north fork, and following its general course to its outlet in Bear creek, at its junction with the south fork, a distance of nearly six miles, and a lateral more than a half mile long, emptying into the main drain (south fork) some five miles up stream from appellee's farm. The report contained a finding that the drain would benefit approximately 18,000 acres, embracing all the land in fifteen sections and parts of sixteen other sections, including lands of the appellants, and was correct and sufficient in its formal parts. The entire drain and the entire drainage district, as laid out, are in the county of Dekalb. The owners of all the additional lands de-

scribed in the petition, including the appellants, were duly served with notice, and 112 of them, among whom were the appellants, filed a remonstrance.

This remonstrance was on the sole ground "that said report of the commissioners of drainage * * * is not according to law," in that (1) said commissioners were not authorized to establish an entirely new and different drainage not petitioned for; that (2) said commissioners grossly abused their discretion in varying the route and termini; and (3) by bringing in parties who could not reasonably anticipate that they were among the number authorized to join in a two-thirds remonstrance against the drain originally petitioned for; and (4) that said commissioners were "not authorized by law to establish a drain outside the area of lands through which the main drain petitioned for will pass," because the owners of such lands could not anticipate that they would be benefited, and so lost the right of joining in a two-thirds remonstrance.

Upon proper request, the court made a special finding of facts, reciting the substance of the facts stated above, together with the following additional facts: That Bear creek is a natural watercourse, formed by the junction of its said two branches; that each of said branches has several laterals running into it, which have been established and constructed as public drains, and there are several laterals emptying into said main stream between the junction point and the river; that the entire length of said watercourse, including the two branches, has been overlaid with different public drains under drainage laws of the State of Indiana, so that it is now all a part of the public drainage system of Dekalb county. "That in the spring and summer of 1910, said Daniel Hursey (appellee) had in contemplation the making of further provision for the drainage of his land, and with that in view had a conversation with the

deputy surveyor of Dekalb county, who informed him that all he would need to do was to file a petition for a drain through his land and the Baker land to said railroad right of way, and that the drainage commissioners would then carry the drain far enough down stream to give him an outlet, and further telling him in connection therewith that when he was ready to start the proceedings he should come to said surveyor's office, and he, the said deputy, would tell him what to do. That shortly afterwards said Hursey went to see said deputy surveyor, who directed him to an attorney to have his petition prepared. Said Hursey thereupon went to the office of said attorney and procured him to prepare and file the petition which was filed in the proceeding, specifically ordering and directing the said attorney to describe the drainage proposed therein as starting at the west line of the Hursey land in the course of the stream heretofore described as the south fork of Bear creek, and following the course of said stream across the Hursey land and that of the Baker heirs, and as ending at the south line of the right of way of said railroad company. That said attorney then prepared the petition as directed, which was signed by Daniel Hursey alone, and filed in the office of the clerk of the Dekalb Circuit Court on the 23rd day of June, 1916. That in proceeding to view the drainage and make their report said commissioners did not first view the line and course described in the petition, but began their work at the extreme west end of the north fork of Bear creek, in section 3, of Jackson township, and then followed the course and located the drain along the north fork of Bear creek to the junction point in said section 8, of Concord township, and thence down the main course of Bear creek to the outlet in the St. Joseph river. Said commissioners then retraced their steps to the said junction point and proceeded to lay out the drain along

the course of the south fork of Bear creek, to the head thereof in section 8, of Jackson township, and in connection therewith located the small Nugen lateral in section 21, of Jackson township."

Out of several hundred landowners who were given notice after the report of the drainage commissioners was filed, 112 signed the remonstrance on the ground that the report was not according to law, as was stated above, and of these forty-four, together with the heirs and administratrix of one who has died, assigned errors in this appeal. But nobody remonstrated on the ground (1) that their assessments were exorbitant, or (2) were too much as compared with the assessments against other lands, or (3) that other lands were assessed too low, or (4) that their lands would not be benefited in the amount assessed against them, or (5) that the damages awarded were inadequate, or (6) that the lands assessed would be damaged, or (7) that it would not be practicable to accomplish the proposed drainage without an expense exceeding the aggregate benefits, or (8) that the proposed work would neither improve the public health nor benefit any public highway nor be of public utility, or (9) that as planned the drain would not be sufficient to properly drain the lands to be affected.

Under the statute, each and every owner of lands described in the report of the drainage commissioners was required to be given notice, and an opportunity to be heard upon a remonstrance for any or all of the foregoing reasons. §§6142, 6143 Burns 1914, Acts 1907 p. 508, §§3, 4.

The report not being challenged on any of these grounds, the question presented for decision is whether a report of drainage commissioners, laying out a drain that will be of public utility and will improve the public health and benefit public

highways, and will be sufficient properly to drain the lands affected, at an expense not exceeding the benefits for which the lands affected have been assessed, in just proportion as between the different tracts, less the damages which they will sustain, is to be adjudged contrary to law because it extends farther up stream and farther down stream than the proposed drain as described in the petition, and includes laterals draining into the parts of the drain above and below the proposed termini, as specified in the petition, and because lands are assessed for its construction that were not described in the petition, which are owned by parties not named in the petition as landowners.

The statute provides, that when a drainage petition is referred to the commissioners, and they find that it is practicable and will be of public utility, and that the costs, damages and expenses will be less than the benefits, "they shall proceed and definitely determine the best and cheapest method of drainage, the termini and route, location and character of the proposed work, and fix * * * including all necessary arms * * * and to make report to the court, under oath, as directed * * * The drainage commissioners * * * may vary from the line described in the petition as they deem best and may fix the beginning or outlet so as to secure the best results * * * They may determine that the method of drainage shall be by removing obstructions from a natural or artificial watercourse; or diverting such watercourse from its channel, by deepening, widening or changing the channel of such watercourse; by constructing an artificial channel, with or without arms or branches; * * * or by any or all of such methods combined." §6142 Burns 1914, *supra.* Under these provisions of the statute, the Supreme Court has repeatedly held that the question presented by this appeal must be answered in the negative. *Wil-*

*son* v. *Tevis* (1916), 184 Ind. 712, 717, 718, 111 N. E. 181; *Wolfe* v. *Gleason* (1917), 186 Ind. 173, 177, 115 N. E. 322; *Thompson* v. *Ryan* (1915), 183 Ind. 232, 238, 108 N. E. 98; *Rayl* v. *Kirby* (1913), 180 Ind. 553, 557, 562, 102 N. E. 136, 103 N. E. 440.

Appellants urge that the form of appellee's petition, purporting to ask for the drainage of only a short section of the south fork of Bear creek, through his own farm and the farm next below, and describing only 480 acres, belonging to eight owners, when the drain as established, including its branches, was almost eighteen miles in length, and would affect 18,000 acres of land, operated as a fraud upon the appellants and others not named in the petition nor given notice before the cause was docketed, by depriving them of their statutory right to defeat the proceeding by filing a "two-thirds remonstrance," under §6142 Burns 1914, *supra*. As to this objection it is sufficient to say that the remonstrance or answer filed by the appellants did not tender any issue of fraud, and the special finding does not include a finding of fraud, nor of facts from which an inference of fraud must follow, as matter of law, without an express finding of its existence. Therefore appellants' exceptions to the conclusions of law present no question as to the effect of fraud or fraudulent intent on the part of the petitioner in instituting such a proceeding, and we decide nothing on that subject. The trial court did not err in overruling the exceptions of appellants to each of the conclusions of law, as applied to the issue before the court and the facts stated in the special finding.

The judgment is affirmed.

Townsend, J., absent.